Raymond J. SAMBS, Plaintiff-Respondent,

v.

CITY OF BROOKFIELD, Defendant-Appellant.†

Court of Appeals

*No. 78–599. Argued July 26, 1979.—Decided September 11, 1979.*
(Also reported in 289 N.W.2d 308.)

---

† Petition to review granted.

1

2

For the appellant, there were briefs submitted by *Hippenmeyer, Reilly, Arenz & Molter* and *George Schmus*, of counsel, with oral argument by *Richard S. Hippenmeyer* of Waukesha.

For the respondent, there was a brief by *V. John Burggraf, Wickert & Fuhrman* and *Aaron Belongia* of Milwaukee, with oral argument by *V. John Burggraf*.

Before Voss, P.J., Brown, J., and Bode, J.

VOSS, P.J.   This is an appeal from the trial court decision rendered on May 9, 1978 in which the trial court held, among other things, that secs. 81.15 and 895.43(2), Stats., were unconstitutional.[1]

On February 21, 1965, the plaintiff was injured in an automobile accident occurring in the City of Brookfield (City). As a result of the accident, the plaintiff suffered paralysis from his midchest, extending over the lower half of his body. According to the complaint, the acts and omissions on the part of the City in the maintenance and repair of the highway were a proximate cause of the accident and resulting injuries.

The case reached the Wisconsin Supreme Court in 1970

---

[1] It should be understood, for the purposes of this opinion, that the references to statutes affecting this decision concern the statutes in effect at the time the action was initially brought, unless otherwise indicated.

and raised the question of whether the City of Brookfield had waived the $25,000 statutory limit contained in secs. 81.15 and 895.43(2), Stats., by acquiring an accident liability policy with a $500,000 limit.[2] The court held that the City did not elect to waive the statutory limits of $25,000 and that the benefits of that statute enure to the insurer, thus distinguishing the case from *Marshall v. City of Green Bay,* 18 Wis.2d 496, 118 N.W.2d 715 (1963).

In 1975, the case was again before the Wisconsin Supreme Court.[3] The jury's verdict had found the driver, Nowak, 70% causally negligent and the City 30% causally negligent. The trial court approved the verdict and found that the defendant City had waived statutory limitations by acquiring the liability accident policy. The Wisconsin Supreme Court found this to be error and reversed the decision.

In the 1975 case, plaintiff raised constitutional questions for the first time at the supreme court level. The court stated since damages had not yet been determined, there was no compelling reason for the court to reach this issue. Thus, the case was returned to the trial court on the issue of damages.[4]

After a trial on the issue of damages, the jury returned its verdict on March 31, 1978 in which it awarded a total of $949,645.66 in damages.[5] In its decision on motions

[2] *Sambs v. Nowak,* 47 Wis.2d 158, 177 N.W.2d 144 (1970).

[3] *Sambs v. City of Brookfield,* 66 Wis.2d 296, 224 N.W.2d 582 (1975).

[4] This case was also the subject of an unpublished decision and order, *Sambs v. City of Brookfield,* No. 75–532 (Wis. S. Ct., February 23, 1976).

[5] Actual breakdown was as follows:

(1) pain, suffering and disability from the time of the accident to date of trial, $100,000; (2) pain, suffering and disability from day of trial and for the remainder of his life, $150,000; (3) loss of earnings from the time of accident to date of trial, $70,-

after verdict, the trial court denied each of defendant's motions.

As one of the motions after verdict, the City of Brookfield asked the trial court to limit any judgment to $25,000, as provided by secs. 81.15 and 895.43 (2), Stats.[6] Plaintiff contended that both statutes violate the equal protection and due process clause of the fourteenth amendment. After finding the plaintiff had standing to challenge the constitutionality of the statutes and after reviewing the basic constitutional principles which govern the court's examination of the statutes, the trial court reached several conclusions. The trial court found there are no substantial distinctions which differentiate the victims of public tortfeasors from those affected in the private sector. According to the trial court, the injuries are no less severe, and a classification may not be based on the identity of the tortfeasor. Furthermore, the statute does not even apply equally to each public tort victim.

000; (4) loss of earning capacity from date of trial and for the remainder of his life, $264,000; (5) drugs and equipment expenses incurred from time of accident to date of trial, $14,676; (6) drugs and equipment expenses from the date of trial and for the remainder of his life, $60,000; (7) hospital and medical expenses from the time of accident to date of trial, $9,169.66; (8) hospital and medical expenses from date of trial and for the remainder of his life, $40,000; (9) housekeeping services from date of accident to time of trial, $33,800; (10) housekeeping services from date of trial for the remainder of his life, $208,000.

[6] Section 81.15, Stats., reads in part as follows:

If damages happen to any person or his property by reason of the insufficiency or want of repairs of any highway . . . the person sustaining such damages shall have a right to recover the same from such town, city or village. . . . The amount recoverable by any person for any damages so sustained shall in no case exceed $25,000.

Section 895.43 (2), Stats., provides in part as follows:

The amount recoverable by any person for any damages, injuries, or death, in any action founded on tort against any . . . governmental subdivision . . . shall not exceed $25,000.

It ignores the degree of injury to the victim and the amount of damages awarded. In the trial court's opinion, the statute discriminates between members of the same class when it allows a victim suffering damages below the maximum to be fully compensated but allows a victim who sustains damages to a sum beyond that limitation to only recover the allotted maximum. The court continued to find the statutes unreasonable, arbitrary and failing in the rule of equality. Therefore, the statutes violate the constitutional guarantee of equal protection. Additionally, the trial court stated that the statutes deprive a victim of governmental negligence of a trial by jury.

On appeal, the following issues are presented: (1) whether the judgment against the City of Brookfield should be limited to $25,000, pursuant to secs. 81.15 and 895.43(2), Stats., (2) whether plaintiff is entitled to recover the hospital and medical expenses awarded by the jury in the seventh verdict answer, and (3) whether plaintiff's claim against the City entitles him to recover damages for wage loss, past and future medical expenses, and housekeeping expenses or whether plaintiff is restricted to damages for personal injuries.

## CONSTITUTIONALITY OF SECS. 81.15 AND 895.43(2), STATS.

In order to properly examine the constitutionality of these statutes, it is necessary to briefly review the constitutional principles which guide this court's examination. The Wisconsin Supreme Court listed the standards for determining the reasonableness of a statute's classification in *Harris v. Kelley,* 70 Wis.2d 242, 252, 234 N.W. 2d 628, 632 (1975).

(1) All classifications must be based upon substantial distinctions which made one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only and must not be so constituted as to preclude addition to the numbers included within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class could be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation. [Citations omitted.]

The standard of "equal protection" review requires only that there be a rational basis for separate classification of parties injured by public tortfeasors. *Binder v. City of Madison,* 72 Wis.2d 613, 622, 241 N.W.2d 613, 618 (1976). A legislative classification is presumed to be valid, and the burden of proof is upon the challenging party to establish the invalidity of a statutory classification. *Omernik v. State,* 64 Wis.2d 6, 18, 218 N.W.2d 734, 741–42 (1974). The challenger asserting that a statutory classification is violative of the equal protection clause must prove abuse of legislative discretion beyond a reasonable doubt. *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843, 846 (1979). Additionally, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 (1961).

In reference to legislative classifications, the following statement is made in 16 Am. Jur.2d *Constitutional Law,* §500 (1964) :

While the legislature has the power to enact laws which, by reason of peculiar circumstances, may affect some persons or classes of persons only, in such instances the class of persons on whom the law is to operate must

possess some common disability, attribute or qualifica-cation, or must satisfy some condition marking them as proper objects for the operation of special or class legislation. [Footnote omitted.]

The State must proceed upon a rational basis; the burden of proof is on the challenger.

Considering these basic constitutional principles and guidelines, this court now addresses the constitutionality of secs. 81.15 and 895.43(2), Stats., and their relation to the doctrine of sovereign immunity. In *Holytz v. City of Milwaukee,* 17 Wis.2d 26, 37, 115 N.W.2d 618, 623 (1962), the Wisconsin court stated that the governmental immunity doctrine has judicial origins and that after careful consideration, the court felt it was appropriate to abolish this immunity, notwithstanding the legislature's failure to adopt corrective enactments. Furthermore, the court commented that "[i]f the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort." *Holytz v. City of Milwaukee, supra,* at 40, 115 N.W.2d at 625.

The legislature has reinstated immunity to varying degrees.[7] In the Wisconsin statutes applicable to the present action, there are, among others, the following degrees of immunity: (1) victims of street defects— liability limited to $25,000 by sec. 81.15, Stats., (2) victims of motor vehicle accidents—unlimited liability by sec. 345.05, Stats., (3) victims of torts by political corporations, governmental agencies or subdivisions and officers, agents or employees—liability limited to $25,000 by sec. 895.43(2), Stats., and (4) victims of actions committed by a state officer in the course of his duties—

---

[7] Sections 81.15 and 345.05, Stats., existed at the time of *Holytz;* sec. 331.43, Stats., (now sec. 895.43, Stats.) was enacted in 1963.

limited liability of $100,000 by sec. 895.45, Stats. Defendant claims that all statutes dealing with immunity are within the legislature's prerogative in view of the court's decision in *Holytz v. City of Milwaukee*.[8] In relation to this argument, the Wisconsin Supreme Court has examined similar issues in *Stanhope v. Brown County*, 90 Wis.2d 823, 280 N.W.2d 711 (1979).

Stanhope appealed from the portion of a judgment which limited the damages she could recover from Brown County and Continental Casualty Insurance Company to $25,000. As in the present case, Brown County and Continental raised the defense, under secs. 81.15 and 895.43, Stats. (1971), that Stanhope could not recover more than $25,000 from Brown County. Stanhope argued that the Wisconsin legislature has established two classes of plaintiffs (victims of governmental negligence and victims of nongovernmental negligence) and two classes of defendants (governmental tortfeasors and nongovernmental tortfeasors). She contended that these classifications are unconstitutional under the equal protection guarantees of the state[9] and federal[10] constitutions and under Wis. Const., Art. I, §9, the "certain remedy" clause.

---

[8] It should be noted that *Holytz* was not a constitutional case. It concerned the judicial abrogation of sovereign immunity and did not involve the constitutional questions which this court now examines.

[9] Wisconsin Constitution, Art. I, §1:

All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.

[10] United States Constitution, Amend. XIV, §1, provides in part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

After reviewing the relevant constitutional principles, the Wisconsin court discussed the historical background of governmental tort immunity.

Although some view the rule as an extension of the theory that "the king can do no wrong," many believe it was born of expediency. Immunity was thought necessary to protect governmental funds from depletion in payment of damage claims. Another reason advanced for the doctrine was that the wrong to the individual must be submerged in the convenience of the public; the individual advantage must give way to the public welfare. [Citation omitted.] *Stanhope v. Brown County,* 90 Wis.2d at 838–39, 280 N.W.2d at 717.

The abrogation of common law municipal tort immunity in *Holytz* altered the function of sec. 81.15, Stats., and similar statutory provisions which were in existence when *Holytz* was decided.[11] "Before *Holytz,* liability of the municipality arose by virtue of sec. 81.15 upon the giving of notice. Since *Holytz,* liability of the municipality would exist in the absence of the statute, and that statute is a limitation upon it."[12]

The court in *Stanhope* recognized the arguments for immunity and for liability.[13] According to the court, the legislative classification that Stanhope challenged expresses a legislative balancing of two purposes: to compensate victims of government tortfeasors and to protect the public treasury.

We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose

---

[11] *Stanhope v. Brown County,* 90 Wis.2d 823, 839–40, 280 N.W. 2d 711, 718 (1979).

[12] *Lang v. Cumberland,* 18 Wis.2d 157, 165, 118 N.W.2d 114, 118 (1962).

[13] Note 11, *supra,* at 839–41, 280 N.W.2d at 717–19.

how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit. *Stanhope v. Brown County,* 90 Wis.2d at 842, 280 N.W.2d at 719.

In view of the court's reasoning directed to classification of victims of public tortfeasors versus victims of private tortfeasors, this court must deny any challenge by the plaintiff which is to the legislature's power to classify victims of public tortfeasors differently than victims of private tortfeasors.

■
However, the plaintiff raises an argument as to the constitutionality of secs. 81.15 and 895.43, Stats., which was not considered by the court in *Stanhope.* Plaintiff contends these statutes and statutes such as sec. 345.05, Stats., create improper classifications within the classification "victims of public tortfeasors."[14] The Wisconsin Supreme Court's reasoning in *Stanhope* was directed to the differentiation between victims of public tortfeasors and victims of private tortfeasors. As such, it was a narrow reasoning, isolated to a determination of the legislature's power to set limits of liability on the recovery of a victim of a public tortfeasor. The Wisconsin Supreme Court did not consider whether the legislature has created improper classifications within the class "victims of public tortfeasors," in establishing the

---

[14] For illustrative purposes, sec. 345.05, Stats., will be compared with sec. 81.15, Stats., throughout this opinion. However, this court's conclusions are not based only upon this one example but upon a thorough examination of the various legislative classifications, such as those created by secs. 895.45 and 895.46, Stats.

various limits of liability. Therefore, it is the opinion of this court that the plaintiff is not precluded from raising this challenge and that the *Stanhope* decision does not control the present situation. Although it might be argued that this specific constitutional argument was not raised at the trial level, constitutional issues raised for the first time on appeal can be entertained if there are compelling reasons to do so.[15] Additionally, the trial court made note of this argument in its decision.[16] The interests in clarifying the state of the law and in preventing a gross injustice are reasons which compel this court to consider the challenge. This is particularly true since related constitutional issues were raised at the trial level.

In *Stanhope,* the Wisconsin Supreme Court stated it did not mean to imply that "because the state may choose either to maintain or waive its sovereign immunity, it is free to impose whatever conditions it pleases with respect to actions against the state or any of its political subdivisions."[17] The actions of the legislature in imposing these conditions are subject to the constitutional principles of reasonableness and nonarbitrariness. Plaintiff contends the legislature has violated these constitutional principles and has created unreasonable and arbitrary subclassifications within the classification "victims of public tortfeasors." For example, victims of street defects which result in an automobile accident are limited in their recovery to $25,000, while victims of automobile accidents involving the negligent operation of a vehicle owned and operated by the state or a municipality are unlimited in their recovery.

In examining the law in other jurisdictions, it becomes clear there is a scarcity of material on this specific issue.

[15] Note 3, *supra*, at 314, 224 N.W.2d at 592.
[16] Record at BB 20 n. 7.
[17] Note 11, *supra*, at 843–44, 280 N.W.2d at 719–20.

■

In *Harvey v. Clyde Park District,* 32 Ill.2d 60, 203 N.E.
2d 573 (1965), the court held that legislative classifica-
tions granting complete immunity to some, partial im-
munity to others, and no immunity to others violated the
Illinois Constitution. Although the Illinois provision dif-
fers from the Wisconsin Constitution, the court's reason-
ing is apposite to the present case. In *Treece v. Shawnee
Community Unit School District, No. 84,* 39 Ill.2d 136,
233 N.E.2d 549 (1968), the court dealt with a challenge
to the constitutionality of a statute which limited re-
covery against a public school district to $10,000. Al-
though not specifically ruling on the validity of the stat-
ute, the court stated that its attitude toward arbitrarily
formulated statutes has been made clear by the expres-
sions in *Harvey v. Clyde Park District.*

Further assistance is provided by *Brown v. Wichita
State University,* 217 Kan. 279, 540 P.2d 66 (1975).
The court summarized the situation as follows:

Presently the state and all of its agencies have absolute
immunity "from liability and suit on an implied contract,
or for negligence or any other tort, except as is other-
wise specifically provided by statute." (K.S.A. 46–901.)
A county, an auxiliary agency of the state, is immune
from liability unless such liability is expressly imposed
by statute, or necessarily implied therefrom. . . . A
city is liable for tortious conduct when engaged in pro-
prietary activities, but enjoys immunity while engaged
in governmental activities except for the creation and
maintenance of a nuisance and the failure to keep streets
reasonably safe. [Citations omitted.]
Under the foregoing, persons injured by a govern-
mental entity are classified, solely, by the type of govern-
mental entity involved. Their right to redress and the
remedies available, if any, to them is dependent solely
upon this classification. *Brown v. Wichita State Uni-
versity,* 217 Kan. at 296, 540 P.2d at 81.

Furthermore, the court stated that a person's "right to
redress by due course of law does not become less worthy

of protection because he or she was injured by a particular governmental unit."[18] The court concluded that under the present law in Kansas, no regard was given to the injury or the facts or circumstances surrounding the events which caused the injury; the classification is forced and "greater burdens are imposed on some than others of the same desert."[19]

Although pertaining to a different factual situation, the reasoning in Brown is applicable to the present case. No regard is given to the injury or the facts surrounding the events which caused the injury in the classifications created by the legislature. The injuries caused by a negligently created street defect are no less severe than the injuries caused by the negligent operation of a municipal vehicle or by the actions of a state officer or employee.

Examining the standards stated by the Wisconsin Supreme Court in Harris v. Kelley, the reasonableness of the different classifications fail. According to these standards, all classifications must be based upon substantial distinctions which make one class really different from aonther. Comparing the classes established by secs. 81.15 and 345.05,[20] Stats., it becomes evident there are no substantial distinctions which make one class really different from another. Both statutes deal with victims of municipal torts, and both statutes deal with injuries which may be slight or may be paraplegic in-

---

[18] Brown v. Wichita State University, 217 Kan. at 297, 540 P.2d at 81 (1975).

[19] Id.

[20] Section 345.05 (2) (a), Stats., reads as follows:

(2) Any of the following may file a claim for damages against the state or municipality concerned and the governing body thereof may allow, compromise, settle and pay the same:

(a) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by the state or a municipality, which damage was occasioned by the operation of such motor vehicle in the course of its business.

juries. Yet the remedies available are determined solely upon the classification. The classifications are forced and artificial. The victims are not different, the tortfeasors are not different, the injuries are not different and the circumstances surrounding the injuries are not different. There is no logical reason why the State can afford to pay unlimited amounts of money if the injury results from an automobile accident with a municipal vehicle but can only afford to pay up to $25,000 if the injury results from an automobile accident caused by a defective highway.

The artificial distinctions are easily illustrated. For example, two people are traveling down the same highway. The first person is forced off the road due to a defect in the highway; this person is paralyzed as a result of this accident. The second person misses the defect but a few seconds later collides with a municipal vehicle being negligently operated in the course of municipal business; this second person is paralyzed as a result of this accident. The first person may recover no more than $25,000, while the second person is unlimited in his recovery. There are no substantial distinctions which make one class really different from the other. This court believes the only difference is an artificial and arbitrary distinction created by the legislature.

The second standard is that the classification must be germane to the purpose of the law. The purpose for limiting liability has been stated as protection of the public treasury and protection against devastatingly high judgments. Defendant may argue these reasons are applicable to plaintiff's challenge, particularly in view of the *Stanhope* decision and the reversal of *Brown v. Wichita State University*. In the reversal of *Brown*,[21] the court stated that it is only necessary to reasonably conceive a state

[21] *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976).

of facts to support governmental immunity in order to uphold a legislative classification. The court listed three reasons to support governmental immunity: (1) a necessity to protect the state treasury, (2) a need to allow the government to function unhampered by the threat of time and energy consuming legal actions, and (3) a necessity to protect the government because of the numerous administrative and high-risk activities undertaken by the various governments.[22] It should also be noted that *Brown* concerned a summary judgment motion and the right to complete immunity. Similarly, the Wisconsin Supreme Court in *Stanhope* concluded the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.

The reasons given by these two decisions clearly falter in the face of the present challenge. The *Stanhope* analysis is sufficient as long as one statute is considered in isolation. However, the *Stanhope* analysis is not applicable to this situation. It cannot be maintained that the state treasury needs protection by limiting liability to $25,000 in sec. 81.15, Stats., yet the state treasury can afford unlimited liability in sec. 345.05, Stats., or $100,000 liability in sec. 895.45, Stats. It is unreasonable for the legislature to take its chances in the area of automobile accidents, yet abruptly limit the liability for identical injuries caused by a highway defect. This court believes such action to be highly unreasonable. The other reasons listed by the court in *Brown* are equally meritless. The second reason in *Brown* is inapplicable as the State engages in legal action even if the liability is limited. Additionally, the argument for pro-

---

[22] *Id.* at 16–17, 547 P.2d at 1027–28.

tection because of high-risk activities is inconsistent with other statutes which have different limits of liability. On the basis of all these reasons, the court is of the opinion that the classifications are not germane to the "purpose" of the law. This court realizes it is to look for any state of facts which may be conceived to justify the classification; however, after a thorough and extensive examination, this court finds *no* state of facts to justify such classification.

For the purposes of this appeal, the third and fourth standards for classifications require no discussion. The fifth standard, however, provides that the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety, having regard to the public good, of substantially different legislation. What characteristics separate the classes created by secs. 81.15 and 345.05, Stats.? As stated previously, the victims are the same, the tortfeasors are the same, and the injuries are the same. However, one is limited in recovery to $25,000; the characteristic of one is not so far different from the other to justify different limits in liability. The public good receives no benefit from such arbitrary and capricious classifications.

■

In view of the reasons and analysis set forth in this opinion, secs 81.15 and 895.43, Stats., are hereby declared unconstitutional in that they create arbitrary, capricious and unreasonable classifications in violation of the Equal Protection Clause of the United States Constitution. To many, this opinion may appear to be a radical departure from long accepted practices. However, it is the duty and the responsibility of the judiciary in this case to determine the constitutionality of these statutes and of the classifications created by the legislature. This court has determined there is no reasonable basis to justify the classifications. Moreover, public policy dictates that

such statutes be declared unconstitutional for it is in the greatest interests of justice that the legal process not allow complete recovery to some members of a class while denying it to others within the same class. The fact that similar statutes can be found in other jurisdictions is not determinative of this court's decision. While it is true that similar statutes in other states is an indication that the classification is reasonable,[23] this fact does not preclude a finding that the statutes are unconstitutional. In this case, the generally accepted practice has been wrong, and the judicial and legislative branches in Wisconsin have an opportunity to correct the matter and prevent further injustice.

This court repeats the instructions found in *Holytz* in that the legislature may impose ceilings on the amount of damages; however, these instructions may not be considered in isolation from *Stanhope*. The legislature is not free to impose whatever conditions it pleases with respect to actions against the state or any of its political subdivisions; "once sovereign immunity has been waived, legislative enactments must conform to the equal protection and due process guarantees of the state and federal constitutions."[24] Therefore, the legislature still possesses the power to impose ceilings. However, these ceilings shall not create improper classifications in violation of the state and federal constitutions.

## HOSPITAL AND MEDICAL EXPENSES

Defendant argues that past hospital and medical expenses which have not been paid by anyone should not be recoverable by the plaintiff because the medical creditors are now barred from recovering such expenses by the statute of limitations.

---

[23] *Bain Peanut Co. v. Pinson*, 282 U.S. 499 (1930).
[24] Note 11, *supra*, at 844, 280 N.W.2d at 720.

Under the collateral source rule, damages to an injured person are "not affected by the fact that the claimant received compensation from other sources such as sick leave, compensation, or insurance." *Payne v. Bilco Co.*, 54 Wis.2d 424, 433, 195 N.W.2d 641, 647 (1972). Moreover, the Wisconsin court has noted that when medical services are rendered gratuitously to one who is injured, the injured party is, in many cases, entitled to recover the value of those services from the tortfeasor on the rationale that the tortfeasor should not get the advantage of gratuities from third parties. *Thoreson v. Milwaukee & S. Transport Corp.*, 56 Wis.2d 231, 243, 201 N.W.2d 745, 752 (1972). It is clear that the collateral source rule permits recovery by plaintiff of these past hospital and medical expenses. The record demonstrates the medical expenses incurred were reasonable and necessary, and the defendant should not be permitted to profit from lack of payment or lack of suit by the medical creditors.

## SUFFICIENCY OF CLAIMS

According to defendant, plaintiff recovered for items not included in the claim filed against the City of Brookfield; therefore, these items of damages are barred by secs. 62.12(8)[25] and 62.25,[26] Stats.

---

[25] Section 62.12(8), Stats., reads as follows:

(8) Claims. (a) All claims and demands against the city shall be itemized and filed with the clerk, who shall deliver the same to the comptroller for examination. The comptroller shall within 30 days thereafter examine such claim or demand and return the same to the clerk with his report thereon in writing, who shall place the same before the council for action at its next meeting.

[26] Section 62.25, Stats., reads in part as follows:

(1) Claims. (a) No action shall be maintained against a city upon a claim of any kind until the claimant shall first present

The trial court correctly interpreted sec. 62.12, Stats., as being applicable to fixed or contractual claims rather than to the damage claims involved in this case. Such a reading is necessary so the demand that all claims be itemized is reasonable and not oppressive. Section 62.25, Stats., is applicable to the case at bar. In *Sambs v. Nowak,* 47 Wis.2d 158, 165, 177 N.W.2d 144, 147 (1970), the court stated that it is well established "for a claim to have efficacy under sec. 62.25, Stats., it must state a specific dollar amount." In the notice of claim filed by the plaintiff, the nature of the injuries sustained were described in great detail; the claim stated more than a specific dollar amount.[27] The claim provided a sufficient base for settlement or compromise without resorting to costly litigation. Defendant's contention is unfounded.

his claim to the council and it is disallowed in whole or in part. Failure of the council to pass upon the claim within 90 days after presentation is a disallowance.

[27] The claim filed with the Common Council of the City of Brookfield read essentially as follows:

I, Raymond J. Sambs, sustained injuries and damages on February 21, 1965, under conditions as set forth in the Notice of Injury served your City Clerk on or about June 14, 1965.

Such injuries include:

Fracture dislocation, closed T7 and T8 with transection of the spinal cord; spastic paraplegia; hemothorax secondary to above; injury to Deltoid and Latissima Dorsi muscles affecting his right arm; fracture of five or six ribs; multiple lacerations of the left hand and fingers; and, contusions and abrasions to his upper torso and other injuries to the body; that claimant suffered in addition great mental and physical pain, nervousness, shock and anguish. . . .

Claim is hereby made against the City of Brookfield for satisfaction of such injuries and damages in the sum of One Million Five Hundred Thousand ($1,500,000) Dollars. Dated June 17, 1970 and signed by Raymond J. Sambs.

## CONCLUSION

In view of the constitutional challenge presented to this court, secs. 81.15 and 895.43(2), Stats., wherein the legislature has created arbitrary, capricious and unreasonable classifications in violation of state and federal constitutions, are hereby declared unconstitutional. All damages awarded to the plaintiff were proper, and the plaintiff is entitled to recover the full amount of the verdict as returned by the jury and approved by the trial court.

*By the Court.*—Judgment affirmed.