Raymond J. SAMBS, Plaintiff-Respondent,

v.

CITY OF BROOKFIELD, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 78-599. Argued May 5, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 504.)

† Motion for reconsideration denied, with costs, on August 11, 1980. ABRAHAMSON and STEINMETZ, JJ., took no part.

For the appellant-petitioner there were briefs by *Michael J. Gross* and *Hippenmeyer, Reilly, Arenz & Molter* of Waukesha; *George Schmus* of West Allis; *Borgelt, Powell, Peterson & Frauen, S.C.,* of counsel, of Milwaukee, and oral argument by *Joseph D. McDevitt* of Milwaukee.

For the respondent there were briefs by *V. John Burggraf* of Wauwatosa; *Wickert & Fuhrman* and *Arron Belongia,* of counsel, all of Milwaukee, and oral argument by *Mr. Burggraf.*

Brief amicus curiae on behalf of the League of Wisconsin Municipalities was filed by *Burt P. Natkins*, legal counsel, of Madison.

SHIRLEY S. ABRAHAMSON, J.   This is a review of a decision of the court of appeals, *Sambs v. City of Brookfield*, 95 Wis.2d 1, 289 N.W.2d 308 (Ct. App. 1979), which affirmed a judgment of the circuit court for Waukesha county, Max Raskin, Circuit Judge.[1] The judgment awarded damages in the amount of $949,645.66 to Sambs, the plaintiff, who suffered extensive personal injuries arising out of an automobile accident on February 21, 1965, for which the city of Brookfield was found 30 percent causally negligent in failing to properly maintain and repair a highway.[2] The city of Brookfield asserted in the circuit court and in the court of appeals that the maximum amount the plaintiff may recover is $25,000, pursuant to sec. 81.15[3] and sec. 895.43(2),[4]

[1] On May 9, 1980, the plaintiff moved for leave to file a response to the brief of the amicus curiae and attached his responsive brief to the motion papers. Because of the new issues discussed in the brief of the amicus curiae and the timeliness of the responsive brief, we grant the plaintiff's motion for leave to file a response to the brief of the amicus curiae and we have considered the brief.

[2] This case has been before this court three times previously: *See Sambs v. Nowak*, 47 Wis.2d 158, 177 N.W.2d 144 (1970); *Sambs v. Brookfield*, 66 Wis.2d 296, 224 N.W.2d 582 (1975); and *Sambs v. City of Brookfield*, No. 75–532 (S. Ct. February 23, 1976) (unpublished decision). The facts are set forth in the published opinions of this court and the published opinion of the court of appeals.

[3] Sec. 81.15, Stats. 1965, provides:

"81.15 **Damages caused by highway defects; liability of town and county.** If damages happen to any person or his property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such town, city or village. If such damages happen by reason of the insufficiency or want of repairs of a highway

Stats. 1965. The court of appeals affirmed the judgment, holding that the $25,000 limitation on the recovery of

which any county by law or by agreement with any town, city or village is bound to keep in repair, or which occupies any land owned and controlled by the county, the county shall be liable therefor and the claim for damages shall be against the county. If the damages happen by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of 2 or more towns the action shall be brought against all the towns liable for the repairs of the bridge and upon recovery of judgment the damages and costs shall be paid by such towns in the proportion in which they are liable for such repairs; and the court may direct the judgment to be collected from each town for its proportion only. No such action shall be maintained unless within 120 days after the happening of the event causing such damages, notice in writing signed by the party, his agent or attorney shall be given to the county clerk of the county, a supervisor of the town, one of the trustees of the village or mayor or city clerk of the city against which damages are claimed, stating the place where such damages occurred, and describing generally the insufficiency or want of repair which occasioned it and that satisfaction therefor is claimed of such county, town, city or village. No notice given hereunder shall be deemed insufficient or invalid solely because of any inaccuracy or failure therein in stating the time, describing the place or the insufficiency or want of repairs which caused the damages for which satisfaction is claimed, if it appears that there was no intention on the part of the person giving the notice to mislead the other party and that such party was not in fact misled thereby. The amount recoverable by any person for any damages so sustained shall in no case exceed $25,000. No action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation existed for 3 weeks."

[4] Sec. 895.43, Stats. 1965, provides:

"895.43 **Tort actions against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of claim; limitation of damages and suits.** (1) No action founded on tort, except as provided in s. 345.05, shall be maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of such corporation, subdivision or agency for acts done in their official

damages arising from highway defects in secs. 81.15 and 895.43 (2), Stats. 1965, violates the equal protection

capacity or in the course of their agency or employment unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage signed by the party, his agent or attorney is served on such volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 262.06. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the damage or injury and the injured party shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe.

"(2) The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $25,000. No punitive damages shall be allowed or recoverable in any such action.

"(3) No suit shall be brought against any political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

"(4) Except as hereinafter provided, the provisions and limitations of this section shall be exclusive and shall apply to all actions in tort against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employe thereof for acts done in an official capacity or the course of his agency or employment. Nothing in this section shall bar an action or impose limitations in any action against any such officer, official, agent or employe individually for intentional torts. When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, .of-

guarantees of the federal and state constitutions.[5] The court of appeals concluded that the legislature had created improper classifications within the class of "victims of public tort-feasors" by establishing limitations on the amount that a victim could recover depending on the nature of the tort-feasor's conduct causing the injury. We reverse the decision of the court of appeals. We conclude that secs. 81.15 and 895.43(2), Stats. 1965, do not violate the constitutional guarantees of equal protection, and we therefore hold that plaintiff's recovery against Brookfield is limited by statute to $25,000.

The plaintiff asserts that the Wisconsin legislature has afforded victims of governmental torts different legal rights on the basis of the nature of the tort committed and that there is no rational basis for this differentiation. The plaintiff poses the following example: Two cars are traveling down the same highway. The first car is forced off the road due to a defect in the highway and the driver is paralyzed as a result of this accident. The second car misses the defect but a few seconds later collides with a municipal vehicle being operated negligently in the course of municipal business; the driver

ficial, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (2) shall be inapplicable."

[5] The Equal Protection Clause is included in the Fourteenth Amendment to the United States Constitution:

". . . nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

The Wisconsin Constitution, Art. I, sec. 1, provides:

"All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

This declaration of rights provides, *inter alia*, protection against unequal treatment by the state guaranteed by the equal protection clause of the United States Constitution. *Pauly v. Keebler*, 175 Wis. 428, 430, 431, 185 N.W. 554 (1921).

of the second car is paralyzed as a result of this accident. The driver of the first car may recover no more than $25,000, while the driver of the second car may recover his full claim for damages. The Wisconsin statutes limit the recovery of victims of highway defects to $25,000, sec. 81.15, Stats. 1965, while the statutes apparently do not limit the amount recovered by victims of motor vehicle accidents, sec. 345.05, Stats. 1965.[6]

---

[6] Sec. 345.05, Stats. 1965, provides:

"345.05 **State and municipal liability for motor vehicle accidents.** (1) In this section the following terms have the designated meanings:

"(a) "Municipality" means any county, city, village, town, school district (as enumerated in s. 67.01(1)), sewer district, drainage district, community center and, without restriction because of failure of enumeration, any other political subdivision of the state.

"(b) "Governing body" means the state legislature with reference to the state, the county board with reference to counties, the town board with reference to towns, the legislative body of a city or village with reference to cities and villages and the board of any district, center or other municipality with reference to other municipalities enumerated in par. (a).

"(c) "Business" means any business whether governmental or proprietary.

"(2) Any of the following may file a claim for damages against the state or municipality concerned and the governing body thereof may allow, compromise, settle and pay the same:

"(a) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by the state or a municipality, which damage was occasioned by the operation of such motor vehicle in the course of its business. For the purposes of this subsection, a motor vehicle shall be deemed owned and operated by the state or a municipality if such vehicle is either being rented or leased, or is being purchased under a contract whereby the state or municipality will acquire title.

"(b) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned or operated by the state through the agency of the Wisconsin national guard, the Wisconsin air national guard or the members or employes thereof when on state duty and whether paid from state or

Although both the plaintiff and the court of appeals, 95 Wis.2d at 11, n. 14, compare sec. 81.15 and sec. 345.05

federal funds and which damage was occasioned by the operation of such motor vehicle in the performance of its business.

"(3) The manner and form of and the place for filing claims shall be:

"(a) If against the state, as provided in s. 16.53(8), with the department of administration.

"(b) If against any county, as provided in ss. 59.76 and 59.77 (1), with the county clerk.

"(c) If against any city, as provided in s. 62.25, with the city clerk.

"(d) If against any village, as provided in s. 61.51, with the village clerk.

"(e) If against any town, as provided in s. 60.36, with the town clerk.

"(f) If against any school district, as provided in s. 40.31.

"(g) If against any other municipality, the claim shall be filed with the person who performs the duties of a clerk or secretary and shall state the time and place of the accident and an itemized statement of the damages sought.

"(4) Failure of the governing body to pass upon the claim within 90 days after presentation constitutes a disallowance. Disallowance by the governing body bars any action founded on the claim unless brought within 6 months after disallowance. Actions against the state and payment of the amount recovered shall be as provided in ss. 285.01 and 285.04. For the purposes of this section, judgments against municipalities shall be certified, filed and collected as provided in s. 66.09 whether named therein or not.

"(5) If the allowance of claim is by or the judgment is against any municipality lying in more than one town, city, village or county, the governing body of the debtor municipality shall prorate the amount of the claim allowed or the judgment and so certify to the proper officials for tax levy, so that the taxable property of the debtor municipality will equitably bear the amount of the claim or judgment.

"(6) This section does not create any liability against a county for any act of the sheriff where such liability is prohibited by Article VI, section 4, Wisconsin constitution."

The court of appeals, 95 Wis.2d at 8, 12, assumed that sec. 345.05, Stats. 1965, provides for unlimited recovery for persons damaged by the negligent operation of a motor vehicle owned and

for illustrative purposes, their conclusion that the statutory limit in sec. 81.15 is unconstitutional is not based on this example only but on an examination of various statutory provisions classifying governmental torts.

The plaintiff points out that sec. 66.091, Stats.,[7] renders a county or city liable for injury to person or property by a mob or riot and the section does not expressly limit the dollar amount that can be recovered. On the other hand, sec. 895.43(2), Stats. 1965, generally limits the amount recoverable by a person for injuries or death

operated by a municipality, reasoning that sec. 345.05, Stats. 1965, was a statute to which the statement in sec. 895.43(4), Stats. 1965, applies:

"When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (2) [which includes the $25,000 limit] shall be inapplicable."

[7] Sec. 66.091, Stats., provides:

"66.091 **Mob damage.** (1) The county shall be liable for injury to person or property by a mob or riot therein, except that within cities the city shall be liable.

"(2) Claim therefor must be filed within 6 months thereafter. Such claim may be allowed in whole or in part, as other claims, and procedure to enforce shall be as for other claims.

"(3) The city or county may recover all such claims and costs paid by it, against any and all persons engaged in inflicting the injury.

"(4) No person shall recover hereunder when the injury was occasioned or in any manner aided, sanctioned, or permitted by him or caused by his negligence, nor unless he shall have used all reasonable diligence to prevent the same, and shall have immediately notified the mayor or sheriff after being apprised of any threat of or attempt at such injury. Every mayor or sheriff receiving such notice shall take all legal means to prevent injury, and if he refuse or neglect to do so, the party injured may elect to hold such officer liable by bringing action against him within 6 months of the injury.

"(5) This section shall not apply to property damage to houses of ill fame when the owner has notice that they are used as such."

in a tort suit against a municipal governmental unit or municipal public officer to $25,000, unless otherwise provided by statute. The amount recoverable against a state officer for a tort is presently limited to $100,000. Sec. 895.45(4), Stats.[8]

The plaintiff demonstrates that because of the fortuity of the nature of the governmental tort-feasor and the conduct, *i.e.,* whether the victim's claim falls within sec. 66.091, sec. 81.15, sec. 895.43(2), or sec. 895.45, victims whose injuries are the same will be entitled to different amounts of recovery. It is because of this statutory pattern of differentiating the amount the victim can recover on the basis of the type of tortious activity by the particular governmental unit involved or its officers or employees that the plaintiff argues that secs. 81.15 and 895.-

---

[8] Sec. 895.45, Stats. 1977, provides:

"895.45 **Timeliness, definition of claimant, notice and limited liability.** (1) No civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of such officer's, employe's or agent's duties, unless within 90 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employe or agent involved.

"(2) In this section, "claimant" means the person or entity sustaining the damage or injury or his agent, attorney or personal representative.

"(3) The notice under sub. (1) shall be sworn to by the claimant and shall be served upon the attorney general at his office in the capitol by certified mail. Notice shall be considered to be given upon mailing for the purpose of computing the time of giving notice.

"(4) The amount recoverable by any person or entity for any damages, injuries or death in any civil action or civil proceeding against a state officer, employe or agent shall not exceed $100,000. No punitive damages may be allowed or recoverable in any such action."

43, Stats., which purport to limit recovery in the instant case, violate the constitutional guarantees of equal protection.

The question is whether the differences in the circumstances under which governmental units become potential tort defendants are sufficient to sustain the legislature's enactment of different limits on the amount of recovery by the victims of governmental torts.

The city of Brookfield maintains that the question plaintiff presents in the instant case was decided by this court in *Stanhope v. Brown County,* 90 Wis.2d 823, 280 N.W.2d 711 (1979). We think *Stanhope* is relevant but not controlling.

In *Stanhope* the plaintiff argued that the statutes established two classes of plaintiffs (victims of governmental negligence and victims of non-governmental negligence) and two classes of defendants (governmental tort-feasors and non-governmental tort-feasors). Stanhope argued that limiting the liability of governmental tort-feasors and limiting the recovery of the victims of governmental tort-feasors to $25,000 as provided by secs. 81.15 and 895.43 was unconstitutional under the equal protection guarantees of the state and federal constitutions and Art. I, sec. 9, of the Wisconsin Constitution, the "certain remedy" clause.[9]

Analyzing the statutes under the rational basis test, this court found the statutes constitutional. The court concluded that the legislature had a reasonable basis in setting the $25,000 limit in sec. 81.15 to protect the public treasury. The court pointed out that the legislative classification Stanhope challenged expressed a legisla-

---

[9] Art. I, sec. 9 of the Wisconsin Constitution provides:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

tive balancing of two purposes: "To compensate victims of government tort-feasors while at the same time protecting the public treasury." 90 Wis.2d at 842. This court was unwilling to say that the legislature had no rational basis to fear that full monetary responsibility entailed the risk of insolvency of municipal governmental entities or intolerable tax burdens. The court said it was within the legitimate power of the legislature to take steps to preserve sufficient public funds to insure that the government would be able to continue to provide those services which it believes benefit the citizenry. The court concluded that "the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tort-feasors to recover their losses up to that limit." 90 Wis.2d at 842. *See also,* Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv. L. Rev. 922, 958 (1978).

As to the specific monetary limitation on recovery the court said that the monetary limit is one which the legislature determines after balancing the ideal of equal justice and the need for fiscal security. Stanhope argued that the $25,000 figure was unreasonably low and that many states had not imposed any limit on recovery and had not experienced any fiscal difficulties. The court said it could not conclude on the basis of the record in *Stanhope* that the $25,000 ceiling adopted by the legislature was arbitrary or unreasonable or violated state and federal constitutional guarantees. This court recognized that whatever the monetary limitation on recovery, the amount will seem arbitrary because it is based on imponderables, and that the legislature, not the court, must select the figure. The limit enacted by the legislature " 'must be accepted unless we can say that it is very wide of any reasonable mark.' *Louisville Gas & Elec.*

*Co. v. Coleman,* 277 U.S. 32, 41 (1928)." *Stanhope,* 90 Wis.2d at 843, n. 11.

We must acknowledge that the $25,000 statutory limitation appears low when considering this case which graphically illustrates the severity of physical injury which may be sustained by tort victims, the high costs of medical care, and the large amount of monetary damages awarded. The New Hampshire Supreme Court recently concluded "that a $50,000 statutory limitation on tort recoveries is precariously close to the boundary of acceptability" and urged the legislature, as we do, "to review periodically all statutory limitations of recovery, including the one at issue here, to insure that inflation and political considerations do not lead to inequitable disparities in treatment." *Estate of Cargill v. City of Rochester,* 119 N.H. ——, 406 A.2d 704, 708, 709 (1979). Nevertheless, on the basis of the record of this case, we conclude, for the reasons set forth in *Stanhope,* that a statutory limitation on recoverable damages in the amount of $25,000 does not per se violate the guarantees of equal protection.

The plaintiff in the instant case, however, raises an equal protection issue that was not raised or considered in the *Stanhope* case. Here the plaintiff contends that the legislature has created improper classifications within the classification of "victims of public tort-feasors." In *Stanhope,* this court compared the class of victims of nongovernmental tort-feasors to the class of victims of governmental tort-feasors and held that sec. 81.15 is constitutional; this court did not decide whether statutory distinctions among the subclassifications of victims of governmental tort-feasors were constitutional. In *Stanhope* we stated that if sovereign immunity is waived, "legislative enactments must conform to the equal protection and due process guarantees of the state and federal constitutions." 90 Wis.2d at 844. *See also, Brown v. Wichita*

*State University,* 219 Kan. 2, 547 P.2d 1015, 1021, appeal dismissed, 429 U.S. 806 (1976); *Estate of Cargill v. City of Rochester,* 119 N.H. ——, 406 A.2d 704 (1979); *Harvey v. Clyde Park Dt.,* 32 Ill.2d 60, 203 N.E.2d 573, 577 (1965). The court of appeals, paying heed to this caution, held unconstitutional the statutory limitations on the amount of damages recoverable against the city of Brookfield, finding no discernible relationship between reality and the statutes limiting damage awards in certain instances and not in others, saying:

". . . The classifications are forced and artificial. The victims are not different, the tortfeasors are not different, the injuries are not different and the circumstances surrounding the injuries are not different. There is no logical reason why the State can afford to pay unlimited amounts of money if the injury results from an automobile accident with a municipal vehicle but can only afford to pay up to $25,000 if the injury results from an automobile accident caused by a defective highway.

". . .

"It cannot be maintained that the state treasury needs protection by limiting liability to $25,000 in sec. 81.15, Stats., yet the state treasury can afford unlimited liability in sec. 345.05, Stats., or $100,000 liability in sec. 895.45, Stats. It is unreasonable for the legislature to take its chances in the area of automobile accidents, yet abruptly limit the liability for identical injuries caused by a highway defect. This court believes such action to be highly unreasonable.

". . .

"As stated previously, the victims are the same, the tortfeasors are the same, and the injuries are the same. However, one is limited in recovery to $25,000; the characteristic of one is not so far different from the other to justify different limits in liability. The public good receives no benefit from such arbitrary and capricious classifications.

". . .

"[S]ecs. 81.15 and 895.43, Stats., are hereby declared unconstitutional classifications in violation of the Equal Protection Clause of the United States Constitution."

*Sambs v. City of Brookfield,* 95 Wis.2d 1, 15, 16, 17, 289 N.W.2d 308 (Ct. App. 1979).

In reviewing the constitutionality of the classification in issue, we begin with the principle repeatedly stated by this court and the United States Supreme Court that all legislative acts are presumed constitutional, that a heavy burden is placed on the party challenging constitutionality, and that if any doubt exists it must be resolved in favor of the constitutionality of a statute. When a statutory classification is challenged as violative of the equal protection clause, the challenger must prove abuse of legislative discretion beyond a reasonable doubt. *Stanhope v. Brown County,* 90 Wis.2d 823, 837, 280 N.W.2d 711 (1979) ; *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843 (1979) ; *WKBH Television Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 566, 250 N.W.2d 290 (1977) ; *State ex rel. La Follette v. Reuter,* 36 Wis.2d 96, 111, 153 N.W.2d 49 (1967).

The appropriate test for review of the classification of governmental tortfeasors and their victims is whether there is a rational basis for the classification. *Stanhope v. Brown County, supra; Binder v. Madison,* 72 Wis.2d 613, 622, 241 N.W.2d 613 (1976) ; *Estate of Cargill v. City of Rochester,* 119 N.H. —, 406 A.2d 704, 707 (1979). The United States Supreme Court described the "rational basis" test in *McGowan v. Maryland,* 366 U.S. 420, 425, 426 (1961) as follows:

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some

inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

In *Omernik v. State,* 64 Wis.2d 6, 19, 218 N.W.2d 734 (1974), we said that the challenged classification must rationally relate to a legitimate state interest:

"A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. . . ."

The legislature has not set forth its rationale for imposing a monetary limitation on recovery in secs. 81.15, 895.43, and 895.45, Stats., or for its failure to impose a monetary limitation on recovery in secs. 66.091 and 345.05, Stats. However, it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow.

The city of Brookfield asserts that these statutes limiting the amount recoverable serve a legitimate public purpose to prevent the disastrous depletion of municipal treasuries, thereby safeguarding public funds and the government's ability to discharge public responsibility.

Historically governmental immunity was thought necessary to protect governmental funds from depletion by payment of damage claims, and it was reasoned that the individual victim's need to be made whole must give way to the public welfare. *See Ayala v. Phil. Bd. of Pub. Ed.,* 453 Pa. 584, 305 A.2d 877 (1973). We recognized in *Holytz v. Milwaukee,* 17 Wis.2d 26, 33, 115 N.W.2d 618 (1962), that the rule of government tort immunity was widely regarded as mistaken and unjust and that dislike of the doctrine could be seen in numerous legislative enactments authorizing governmental liability. In *Holytz* we abrogated the doctrine of immunity saying "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." Nevertheless we recognized in *Holytz* that limitations on public tort responsibility continue to exist. *See* Davis, *Administrative Law,* sec. 25.11 (1958). We also recognized that judicial abrogation of common law immunity did not bind the legislature. "If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort." *Holytz v. Milwaukee, supra,* 17 Wis.2d at 40.

Sec. 81.15, Stats., relating to governmental liability for highway defects, sec. 345.05, Stats., relating to governmental liability for the operation of motor vehicles, and sec. 66.091, Stats., relating to government liability for mob and riot damage, are examples of legislative exceptions to governmental immunity which predate *Holytz.* The legislature has changed the limitations on the amount recoverable under sec. 81.15 over the years. *Stanhope v. Brown County,* 90 Wis.2d at 839, n. 9. The recovery from government for damage from motor ve-

hicles[10] and from mob or riot[11] has apparently been unlimited for many years.

The legislature's goal after *Holytz* was to delineate the liability to which governmental units would be exposed as a result of *Holytz,* to reduce the financial strain, and to enable the governmental units to plan for the risk of such liability.

In 1963 the legislature in response to *Holytz* enacted sec. 331.43, Stats. 1963 (now sec. 895.43, Stats.), generally allowing actions founded on tort against political corporations, governmental subdivisions or agencies and officers, agents, or employees and limiting recovery to $25,000. In 1973, the legislature limited the amount recoverable in a suit against a state officer to $100,000. Laws of 1973, ch. 333, sec. 182c, sec. 895.45, Stats.

The city of Brookfield argues that there are good reasons for the legislature on the one hand to limit the amount recoverable with respect to highway defects (sec. 81.15, Stats.) and on the other hand to impose no limit on the amount recoverable where motor vehicles (sec. 345.05, Stats.) are involved. A municipality may have hundreds or thousands of miles of streets or highways within its jurisdiction; any number of phenomena beyond the municipality's control may cause a highway defect, such as abnormal weather conditions, shifts in the underlying soil conditions, acts of third parties; many highways defects can occur without actual notice to a municipality; more often than not the highway defect may result from the municipality's failure to act rather than its overt conduct. Insurance may or may not be readily available at reasonable cost to municipalities to cover these risks. In contrast, the municipality

[10] Laws of 1929, ch. 77.

[11] Sec. 66.091, Stats., was first enacted by ch. 211, Laws of 1863 and has been amended a number of times. *See* Wisconsin Legislative Council Staff Research Bulletin 76-6, "Public Liability for Civil Disturbance Damage," 3-4 (1976).

can select the persons it authorizes to operate motor vehicles; it can regulate the use of motor vehicles in the course of its activities; and liability is usually associated with an overt act, "active" negligence, rather than a failure to act. The use of motor vehicles is an ordinary activity in the private, as well as the public, sectors and there is substantial experience in both sectors with tort liability in the use of motor vehicles. Automobile liability insurance apparently is readily available to governmental units.

These factors could influence a reasonable legislature to conclude that the municipal treasury could be protected from damage claims arising from the use of municipal motor vehicles without limiting the amount of the victim's recovery, but that the municipal treasury needs to be protected against excessive depletion of funds by limiting the amount of the victim's recovery in highway defect cases.

There also appears to be a basis for distinguishing sec. 81.15, which limits recovery for damages from highway defects, from sec. 66.091, which does not limit the amount of recovery for injuries occasioned by mob or riots. Sec. 66.091, unlike sec. 81.15, is of limited application. The words mob and riot are limited by statutory definition. A victim is not allowed to recover if "the injury was occasioned or in any manner aided, sanctioned, or permitted by him or caused by his negligence, nor unless he shall have immediately notified the mayor or sheriff after being apprised of any threat of or attempt at such injury." Also, if the injured party recovers from his insurer, the insurer cannot recover against the city or county under the theory of subrogation. *See Frebock v. Jefferson Co.* 219 Wis. 154, 262 N.W. 588 (1935); *Koss v. State,* 217 Wis. 325, 258 N.W. 860 (1935); *Interstate Fire and Casualty Co. v. Milwaukee,* 45 Wis.2d 331, 173 N.W.2d 187 (1970); *America*

*Ins. Co. v. Milwaukee,* 51 Wis.2d 346, 187 N.W.2d 142 (1971).

Municipalities have not been subjected to substantial liability under sec. 66.091, Stats. A study by the Wisconsin Legislative Council Staff found that municipalities usually are "self-insured" for mob or riot damage "meeting the costs of mob or riot damage liability out of general funds" and that they have paid a small amount for damages under sec. 66.091:

"In the 1969–1972 period, the City of Madison paid a total of $535 in settlements and judgments stemming from actions under this statute. In the same period Oshkosh and La Crosse paid no claims. The City of Milwaukee paid approximately $10,000 in the more than 300 cases brought against it under the statute during those years.

"It is of interest to note that during the period of 1969–1972 a number of claims were filed against Madison totaling in the millions of dollars. Of all those claims the City of Madison paid a total of only $535. According to the city attorney's office, none of these claims was pursued in court." *See* Wisconsin Legislative Council Staff, *Public Liability for Civil Disturbance Damage* (Research Bull. 76–6, July 20, 1976).

The legislature could reasonably conclude on the basis of these factors that it need not put a ceiling on the amount to be recovered under sec. 66.091 in order to safeguard municipal treasuries. In comparison, the legislature could have believed that if it allowed unlimited recovery for damage incurred because of highway defects, there would be great risk to the public treasury. The application of sec. 81.15 is not limited, and there is an exposure for substantial damages under sec. 81.15. There is therefore a rational basis for the different way of regulating recovery of damages under sec. 66.091 and sec. 81.15, Stats. 1965.

It appears that the legislature has imposed a ceiling on the victim's recovery if the liability statute is of

broad, general application, exposes the government to many claims, and exposes the government to the risk of great financial loss against which the government may not be able to insure itself at reasonable cost. Consistent with this rationale, sec. 895.43, Stats., the general statutory provision allowing recovery against a municipal governmental unit or municipal public officer for injuries or for death "founded on tort", limited the amount recoverable to $25,000. *See* sec. 895.43, Stats., quoted at note 4, *supra*. The legislature also limits to $100,000 the amount recoverable in a civil action or civil proceeding against state officers for or on account of any act growing out of or committed in the course of the discharge of the officer's duties. Laws of 1973, ch. 333, sec. 182c; sec. 895.45(4), Stats.[12] The legislature could reasonably allow a higher amount to be recovered from the state than from a municipal unit of government, because the legislature could conclude that the state is in a better financial position to shoulder the burden of being liable for a larger amount than is a municipal governmental unit.

Government engages in activities of a scope and variety far beyond that of any private business, and governmental operations affect a large number of people. Municipal units of government have hundreds and thousands of employees. Municipal units of government maintain hundreds and thousands of miles of streets and

[12] Sec. 895.46, Stats., requires the municipality or state to pay the judgment entered against its respective officer or employee. The predecessor of sec. 895.46, Stats., was sec. 270.58, Stats. 1965. *Forseth v. Sweet*, 38 Wis.2d 676, 158 N.W.2d 370 (1968). If the amount recoverable against the employee cannot exceed $25,000 under sec. 895.43(3), Stats., or $100,000 under sec. 895.45(4), Stats., the city of Brookfield assumes, although this issue has not been raised or decided, that under sec. 895.46 the damages recoverable from a municipality cannot exceed $25,000 and from the state, $100,000.

highways and drains and sewers, subject to many hazards; they operate numerous traffic signals, parking lots, office buildings, institutions, parks, beaches and swimming pools used by thousands of citizens. Damage actions against a governmental entity may arise from a vast scope and variety of activities. A claim against a government unit may range from a few dollars to a few million dollars. A municipal unit of government, limited in fund-raising capacity, may lack the resources to withstand substantial unanticipated liability. Unlimited recovery to all victims may impair the ability of government to govern efficiently. *See* Kennedy & Lynch, *Some Problems of a Sovereign Without Immunity,* 36 S. Cal. L. Rev. 161 (1963).

It is the legislature's function to evaluate the risks, the extent of exposure to liability, the need to compensate citizens for injury, the availability of and cost of insurance, and the financial condition of the governmental units. It is the legislature's function to structure statutory provisions, which will protect the public interest in reimbursing the victim and in maintaining government services and which will be fair and reasonable to the victim and at the same time will be realistic regarding the financial burden to be placed on the taxpayers. Giving due deference to the legislature, this court will not set aside a statutory classification "if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 (1961).

We conclude that the legislature in enacting secs. 81.15 and 895.43 could reason that a maximum should be imposed on the amount recoverable in those situations where the burden of unlimited liability may be substantial and the danger of disrupting the functioning of local government by requiring payment of substantial

damage awards may be great.[13]  Accordingly, we conclude that the plaintiff has not carried his burden of proving that it is arbitrary or invidious for the legislature to limit the amounts recoverable by a victim of a highway defect from a city.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed; and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

[13] For a court upholding a statutory scheme that imposes different ceilings of recovery for different torts and different units of government, although the scheme "resembles a crazy quilt more than a carefully balanced sculpture," *see Estate of Cargill v. Rochester,* 119 N.H. ——, 406 A.2d 704 (1979), in which the court said:

"It is argued that the limitation on recovery here is arbitrary and irrational when considered together with the different amounts available in actions against other government agencies. See RSA 110–A:81 (National Guard, $250); RSA 229:8–a (Supp. 1977) (state public works and highways, $300); RSA 541–B:12–14 (Supp 1977) (State, $10,000, $20,000 or $50,000 depending on type of claim and legislative goodwill); RSA 491:8 (State, contracts, no limit). *Accord, Harvey v. Clyde Park District,* 32 Ill.2d 60, 203 N.E.2d 573 (1965). It may still be true that the rules governing actions against governmental units are " 'as logical as those governing French irregular verbs.' " *Gossler v. City of Manchester,* 107 N.H. 310, 315, 221 A.2d 242, 245 (1966) (Kenison, C. J., dissenting). In enacting a particular statute, however, the legislature "may address itself to only that phase of a problem that appears most acute," *Opinion of the Justices,* 117 N.H. 749, 758, 379 A.2d 782, 788 (1977), even if the net result resembles a crazy quilt more than a carefully balanced sculpture. *See Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S. Ct. 461, 99 L.Ed. 563 (1955). The equal protection clause does not require mathematical equivalence. *Richardson v. Brunelle,* 119 N.H. 104, 398 A.2d 838, 840–41 (1979); see *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970)."