Samuel **GOLDSTEIN** et al., Plaintiffs-Appellants,

v.

**CITY OF CHICAGO**, a municipal corporation, et al., Defendants-Appellees.

No. 72–1965.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1973.

Decided July 12, 1974.

**990**

Richard S. Kuhlman, Chicago, Ill., for plaintiffs-appellants.

Richard L. Curry, Corp. Counsel, Daniel Pascale, Asst. Corp. Counsel, Michael G. Goldstein, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, CUMMINGS and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

Samuel Goldstein, plaintiff-appellant, and the class that he alleges to represent, appeal from the dismissal of their complaint for failure to state a claim upon which relief can be granted. The class action plaintiffs are owners of condominium living units located in Chicago. The defendants are the City of Chicago, various city officials in charge of garbage and refuse removal, and the Treasurer of Cook County. The Treasurer was named a defendant because he is the legal custodian of the funds collected from property taxes and is responsible for disbursing those funds to the city officials in charge of garbage removal.[1]

The suit was brought under 42 U.S.C. § 1983. The city officials are alleged to have violated the equal protection and due process clauses of the Fourteenth Amendment by refusing to provide condominium dwelling units with the garbage removal mandated by sections 14–3 and 14–11 of the Municipal Code of Chicago.[2] Goldstein argues that the class action plaintiffs that he represents pay property taxes to cover the expense of the garbage removal, but do not receive it; they are forced to hire private scavengers. It is contended that they should receive garbage removal just as individual homeowners do. The officials reply that they are under no duty to provide garbage removal to the condominium owners since section 99–18 of the Municipal Code of Chicago places the duty of garbage collection on the condominium owners themselves. Section 99–18 provides in relevant part:

"Except in the case of a multiple dwelling containing less than five living units, a multiple dwelling producing less than thirty-two gallons of refuse per week, or a multiple dwelling each living unit of which is individually heated by the tenant, it shall be the duty of the owner of every multiple dwelling to cause to be re-

1. The Treasurer did not file a separate brief but joined in the brief of the Corporation Counsel for the City of Chicago.

2. Section 14–3. The commissioner of streets and sanitation shall have supervision of the improvement and maintenance of the public ways of the city and the lighting thereof except where such improvement is to be paid for wholly or in part by special assessment;

the cleaning of public ways and the removal of garbage, refuse and waste; the removal of any article or thing which may encumber or obstruct any public way; and the installation and inspection of all electrical equipment not specifically provided for by other sections of this ordinance. [Repealed—new section passed. Coun.J. 12–20–40, p. 3668; amend. 1–9–46, p. 4740; 2–4–47, p. 7205; 11–10–52, p. 3413; 12–7–56, p. 3595.]

moved at his own cost and expense at least once each week all refuse produced therein."

The district court decided that Goldstein had failed to state a claim upon which relief could be granted. The judge, relying on Bradford Township v. Illinois State Toll Highway Authority, 463 F.2d 537 (7th Cir. 1972), stated: "The determination of the issue presented depends entirely upon a question of state law, *i.e.*, the interpretation of the ordinance. If defendants' interpretation is correct, as it would seem to me to be if I were a state judge presented with the issue, plaintiffs state no cause of action, for they do not, even alternatively, attack the validity of the ordinance. Even if plaintiffs' interpretation were correct and defendant officers were thus violating implicit affirmative duties with respect to plaintiffs, that violation would not give rise to a federal cause of action. Failure to follow a state statute does not, of itself, constitute a violation of a federally protected right."

In analyzing the constitutional issue, the district judge found that refuse collection was "one of the numerous social welfare benefits which governmental units have voluntarily undertaken to provide," but was "certainly not a fundamental right." He relied on Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), and found no violation of the equal protection clause.

We accept the interpretation which the city places on its ordinance.[3] The question then is: Does the city deny the plaintiffs the equal protection of the laws? Before we can answer we must first determine by what constitutional standard the ordinance should be tested. Is the applicable test one involving a "fundamental" right protected by the Constitution or must the city show only

that there is a rational basis for the different classifications in the ordinance?

■■ Owners of a multiple dwelling with more than five units which has more than thirty-two pounds of garbage are not an inherently "suspect" class. The seminal case dealing with inequality of law enforcement by local officials is Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1885). In that case, unlike here, the inequality was focused upon certain people because of their race and national origin.[4] Suspect classifications identified by the Supreme Court are race, national origin, alienage, indigency, or illegitimacy. San Antonio School District v. Rodriquez, 411 U.S. 1, 61, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, *J., concurring*). Multiple dwelling owners is not such a suspect class.

■■ Nor is the right to public garbage collection a fundamental right, such as the right to travel interstate or the right to vote. In *San Antonio School District*, the Supreme Court held that education was not a fundamental right. Mr. Justice Powell, speaking for the Court in *San Antonio School District*, in defining the criteria for determining what is a fundamental right, quoted from Mr. Justice Stewart's opinion in Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969):

> "The Court today does not 'pick out particular human activities, characterizes them as "fundamental," and give them added protection . . . .' To the contrary, the Court simply recognizes, as it must, an established constitutional right, and gives to that right no less protection than the Constitution itself demands." *San Antonio School District*, 411 U.S. at 31, 93 S.Ct. at 1295.

3. If the ordinance is misinterpreted by the city, then the plaintiffs' remedy is in the state court.

4. *See* Hawkins v. Town of Shaw, Mississippi, 437 F.2d 1286 (5th Cir. 1971), for a case in which a violation on the equal protection clause was found to have occurred when less municipal services were provided to black residents in one part of town in comparison with those provided white residents in other parts of the town.

Mr. Justice Powell later expanded on Mr. Justice Stewart's language. Although he was there speaking about education, we think that it is similarly applicable to garbage collection.

"It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. Thus the key to discovering whether education is 'fundamental' is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution. Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Police Dept. of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

"Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." 411 U.S. at 33–35, 93 S.Ct. at 1297.

Since multiple dwelling ownership is not an inherently suspect classification and since garbage collection is not a fundamental right, the test to be applied is whether the city has a rational basis for distinguishing between condominium owners in large multiple unit residential buildings and owners of single housing units.

The city contends and we agree that the ordinance does not distinguish between types of ownership but between types of building—single family home versus large multiple unit buildings—and that the reason for this distinction is that the owner(s) of large residential buildings with a great amount of garbage have more effective bargaining power with private scavenger services than the owner of a single unit.

The city's distinction between types of residential structures in providing efficient sanitation is, in our judgment, reasonable. Accordingly, the ordinance does not violate the equal protection clause of the Fourteenth Amendment.

The dismissal of plaintiffs' complaint is affirmed.