The CLASS OF OWNERS & LESSORS OF MULTIPLE FAMILY RESIDENTIAL BUILDINGS CONSTRUCTED IN the CITY OF RACINE DURING OR AFTER 1963 WHICH CONTAIN FIVE OR MORE DWELLING UNITS PER BUILDING WHERE GARBAGE (REFUSE & SOLID WASTE) COLLECTION & REMOVAL INVOLUNTARILY NEVER EXISTED OR HAS BEEN INVOLUNTARILY DISCONTINUED: Henry CARPENTER, Representative Member, Plaintiffs-Respondents,†

v.

COMMISSIONER OF PUBLIC WORKS OF the CITY OF RACINE, Wisconsin, Defendant-Appellant.

Court of Appeals

*No. 83–100. Submitted on briefs July 14, 1983.—*
*Decided September 26, 1983.*
(Also reported in 339 N.W.2d 608.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of Racine City Attorney by *Daniel P. Wright,* Deputy City Attorney of Racine.

For the plaintiffs-respondents the cause was submitted on the brief of *William R. Binetti* of Racine.

Before Scott, C.J., Voss, P.J., and Robert W. Hansen, Reserve Judge.

SCOTT, C.J.  This is an appeal from a judgment resulting from a class action suit finding that the Commissioner of Public Works for the City of Racine discriminated against various owners and lessors of multiple family residential buildings in the collection of solid waste.  The issues on appeal in this case are many.  As to the class certification, however, compliance with the notice of claim requirement of sec. 893.80, Stats., is dispositive.  Because only Henry Carpenter satisfied the statutory notice requirements, we must reverse the order denying the defendant's motion to decertify the class.  As to Carpenter's suit, because we conclude there was no denial of his right to equal protection, we also reverse the trial court's denial of the defendant's motion for a directed verdict.

In 1963, due to a lack of appropriations from the city council, Fred Larson, the Racine Commissioner of Public Works, decided not to provide solid waste collection services to buildings constructed during or after 1963 which contained five or more dwelling units per

building. In 1976, the City of Racine, pursuant to Larson's direction, stopped solid waste collection at Carpenter's apartment building which contained eight dwelling units. Carpenter procured the services of a commercial waste collection service beginning in March of 1976. In early 1978, the Racine common council passed an ordinance which provided that no building containing five or more dwelling units would receive solid waste collection services.

On December 14, 1979, Carpenter presented a notice of claim to the city of Racine in the care of Anthony J. Schleffer, City Clerk. The notice of claim referred to Carpenter personally as a claimant and as a representative member of a class of parties having apartment buildings of five units or more. In August 1980, Carpenter filed suit personally and as representative member of the class. The defendant's motion to decertify the class was denied by the trial court.

A jury trial was held on August 8, 1982. The defendant moved for a directed verdict at the end of the plaintiffs' case on the grounds that there was no denial of equal protection. The trial court denied this motion. A special verdict was returned awarding the class $764,612 in damages.

The Commissioner of Public Works contends on appeal that certification of the class was improper because the class members, other than Carpenter, failed to file the requisite notice of claims under sec. 895.45, Stats. (1977).[1] He also argues that the trial court should have

---

[1] Section 895.45, Stats. (1977), provides:

(1) No civil action or civil proceeding may be brought against any state officer, employe or agent for or on account of any act growing out of or committed in the course of the discharge of such officer's, employe's or agent's duties, unless within 90 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written

granted the defendant's motion for a directed verdict because there was no denial of Carpenter's constitutional right to equal protection as a matter of law. We agree.

Section 895.43, Stats. (1977),[2] requires that no action be brought or maintained against a governmental body

notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employe or agent involved.

(2) In this section, "claimant" means the person or entity sustaining the damage or injury or his agent, attorney or personal representative.

(3) The notice under sub. (1) shall be sworn to by the claimant and shall be served upon the attorney general at his office in the capitol by certified mail. Notice shall be considered to be given upon mailing for the purpose of computing the time of giving notice.

(4) The amount recoverable by any person or entity for any damages, injuries or death in any civil action or civil proceeding against a state officer, employe or agent shall not exceed $100,000. No punitive damages may be allowed or recoverable in any such action.

[2] Section 895.43, Stats., has been renumbered as sec. 893.80, Stats., which reads in pertinent part:

(2) No action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of the corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give

or agency unless the claimant has filed a notice of claim as a step towards the recovery of a monetary claim. *Rabe v. Outagamie County,* 72 Wis. 2d 492, 497, 241 N.W.2d 428, 431 (1976). In *Hicks v. Milwaukee County,* 71 Wis. 2d 401, 238 N.W.2d 509 (1976), the supreme court applied this notice requirement to class action suits against a governmental body. In *Hicks,* a Huber prisoner sued Milwaukee county on behalf of himself and all similarly situated prisoners based upon a theory that the county's practice of overcharging prisoners resulted in unjust enrichment. The plaintiff filed a notice of claim against the county on behalf of himself and all members of the class. In dismissing the class action, the court held that "[e]very person making a claim against a county must state the nature of the claim and the facts upon which it was founded in writing." *Id.* at 407, 238 N.W. 2d at 513. The court further stated that "a document presenting multiple claims against a county must at the minimum identify the claimants and show that the claims are being made by their authority." *Id.*

---

the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. No action on a claim against any defendant fire company, corporation, subdivision or agency nor against any defendant officer, official, agent or employe, may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect.

Using the guidelines and rationale set down in *Hicks*, the plaintiffs' class action suit must fail. The notice of claim filed by Carpenter on December 14, 1979 does not meet the minimum standard for asserting claims against a governmental entity by a member of a class. Carpenter's notice of claim does not identify his fellow claimants, nor does it show that Carpenter is authorized to act on their behalf.

The plaintiffs attempt to distinguish *Hicks* by pointing out factual dissimilarities between the cases. We find no legal significance in these differences. We conclude it is a logical extension of *Hicks* to apply the notice of claim requirements to the class action in the present case.

Although the notice of claim is inadequate as to the class, it appears to be sufficient as to Carpenter's action individually. We, therefore, must consider the merits of the case as to Carpenter's claim.

At the close of the plaintiffs' case, the defendant moved for a directed verdict on the grounds that, as a matter of law, the Commissioner's actions regarding the suspension of garbage collection did not violate the constitutional right to equal protection. It is the duty of the trial court to decide constitutional issues as a matter of law.[3] *Just v. Marinette County*, 56 Wis. 2d 7, 24–26, 201 N.W.2d 761, 771–72 (1972) ; *Weber v. State*, 59 Wis. 2d 371, 381, 208 N.W.2d 396, 401 (1973). Because we find there was a rational basis for the Commissioner's action and no evidence that Carpenter was the victim of intentional, systematic or arbitrary discrimination, we

---

[3] Determination of the constitutional issue of the denial of equal protection is a question of law to be made by the trial court. In this case, the trial judge erroneously sent this issue to the jury for determination.

conclude that the trial court erred when it denied the defendant's motion for a directed verdict.

In deciding whether Carpenter was denied equal protection of the laws, we must determine by what constitutional standard the actions of the Commissioner of Public Works should be tested. Initially, we must consider the case to determine whether multiple dwelling ownership is a suspect classification or garbage collection is a fundamental right. If a fundamental right or suspect classification is involved, the action will be subjected to a strict scrutiny and will survive an equal protection challenge only if it serves an important governmental objective that could not be accomplished through less burdensome means. *O'Connell v. Kniskern*, 484 F Supp 896, 898–99 (E.D. Wis. 1980), *cert. denied*, 454 U.S. 1084 (1981).

Suspect classifications identified by the Supreme Court are race, national origin, alienage, indigency or illegitimacy. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 61 (1973) (Stewart, J., concurring); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Multiple dwelling ownership is not an identified suspect classification. *Goldstein v. City of Chicago*, 504 F.2d 989, 991 (7th Cir 1974). A fundamental right is a right which is explicitly or implicitly guaranteed by the constitution. *San Antonio School District*, 411 U.S. at 33 (held education was not a fundamental right); *Dandridge v. Williams*, 397 U.S. 471 (1970) (held housing as welfare benefit was not a fundamental right). Garbage collection is neither an explicitly nor an implicitly guaranteed constitutional right. *Goldstein*, 504 F.2d at 991.

Since garbage collection is not a fundamental right and multiple dwelling ownership is not a suspect classification, the applicable test is whether the Commissioner's

action, in distinguishing between buildings with five dwelling units or more and those with less than five dwelling units, was rationally related to a legitimate public interest. *Id.* at 992. Based upon a similar factual situation, the Seventh Circuit in *Goldstein* found that distinguishing between different types of multiple dwelling residential structures in order to provide efficient sanitation for the community was reasonable. Likewise, we find that the Commissioner's decision to restrict public garbage collection to multiple dwellings of less than five units is reasonable. The action bears a rational relationship to the city's legitimate public interest in providing efficient sanitation to the community as a whole.

Carpenter argues that discrimination occurred within the class of owners of housing units with five or more dwelling units because of unequal enforcement of the Commissioner's order. While this court recognizes that there is sufficient evidence to show such unequal enforcement did occur in and of itself, it is insufficient to classify the Commissioner's acts as unconstitutional. *State ex rel. Cities Service Oil Co. v. Board of Appeals,* 21 Wis. 2d 516, 544, 124 N.W.2d 809, 823 (1963). "There must be a showing of an intentional, systematic and arbitrary discrimination." *Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 145, 311 N.W.2d 658, 662 (Ct. App. 1981). Carpenter made no such showing in this case. Selective enforcement which occurs over a period of time does not, by itself, constitute a constitutional violation unless there is no intention to follow it up by general enforcement against others. *Id.* at 146, 311 N.W.2d at 663, *citing People v. Utica Daw's Drug Co.,* 16 App. Div. 2d 12, 21, 225 N.Y.S.2d 128, 136, 4 A.L.R.3d 393, 402 (1962). It was the intent of both the Commissioner of Public Works and the Common Council

of Racine to have equal enforcement. Equal enforcement, in fact, occurred by the spring of 1982.

We hold that because all class members except Carpenter failed to properly file notice of their claims to the Commissioner of Public Works, the defendant's motion to decertify the class should have been granted. As to Carpenter, while notice of claim was filed, there was no denial of equal protection because there was a rational basis for the Commissioner's action, and inadvertent unequal enforcement is not sufficient to show a denial of equal protection.

*By the Court.*—Judgment reversed and remanded.

