Joseph RUBIN, Morton Luck and Phillip Rand, partners, d/b/a Madison Parkview Company, a Wisconsin general partnership, on behalf of itself and all other property owners in the City of Wauwatosa similarly situated, Plaintiffs-Respondents,

v.

CITY OF WAUWATOSA, a municipal corporation, Defendant-Appellant.†

Court of Appeals

*No. 83–140. Submitted on briefs September 15, 1983.— Decided November 18, 1983.*
(Also reported in 342 N.W.2d 451.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Harold D. Gehrke* of Wauwatosa.

For the plaintiffs-respondents the cause was submitted on the briefs of *Peregrine, Marcuvitz & Peltin, S.C.,* with *Alan Marcuvitz* and *Andrea Roschke* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Brown, JJ.

WEDEMEYER, P.J.   The City of Wauwatosa appeals from the trial court's declaratory judgment determining that ch. 8.26 of the Wauwatosa Code of Ordinances and its implementing resolution R–81–797 are not authorized by the statutes of the state of Wisconsin and are unconstitutional.[1]   The assignment of error by Wauwatosa

---

[1] Wauwatosa City Council resolution No. R–81–797 reads as follows:

### RESOLUTION

BE IT RESOLVED, By the Common Council of the City of Wauwatosa, Wisconsin, THAT the following schedule of weekly refuse collection charges as set forth below be adopted for the year 1982:

### 1982 WEEKLY COMMERCIAL REFUSE COLLECTION CHARGES

| | | |
|---|---|---|
| 1 cu. yd. | Standard Wheeled Refuse Container | $3.00 per collection |
| 2 cu. yd. | Standard Wheeled Refuse Container | 5.00 per collection |
| 1–20 gal. | Standard Garbage Can or Equivalent (Example: 3–20 gal. garbage cans—$3.00 charge per week.) | 1.00 per container per collection |
| 6 family Apartment Buildings | | 6.00 per collection |
| 8 family Apartment Buildings | | 8.00 per collection |
| 55 gallon drum or similar sized containers | | 3.00 per collection |

(Note: Plastic bags shall be charged on the same basis as 20 gallon garbage cans.)

essentially presents two questions: (1) Did Wauwatosa exceed its statutory authority in adopting ch. 8.26(b) and resolution No. R–81–797; and (2) Did this legislative

BE IT FURTHER RESOLVED, That in the event of special pick-ups or special circumstances involving commercial collections, where no charges have been set, the Board of Public Works shall be empowered to establish such charges as may be reasonable and proper.

BE IT FURTHER RESOLVED, That this resolution shall go into effect on and after February 1, 1982.

Wauwatosa city ordinance ch. 8.26 reads as follows:

## ORDINANCE

AN ORDINANCE CREATING CHAPTER 8.26 OF THE CODE OF THE CITY OF WAUWATOSA PERTAINING TO COMMERCIAL REFUSE COLLECTION.

The Common Council of the City of Wauwatosa do ordain as follows:

Part 1. Chapter 8.26 of the Code of the City of Wauwatosa is hereby created to be numbered and to read as follows:

### Chapter 8.26

#### COMMERCIAL REFUSE COLLECTION

Sections:
8.26.010  Declaration of purpose.
8.26.020  Definitions.
8.26.030  Preparation, storage and disposal.
8.26.040  Separation of refuse.
8.26.050  Container enclosures.
8.26.060  Containers—location.
8.26.070  Special refuse collection.
8.26.080  Commercial refuse collection fee established.
8.26.090  Citations for violations.

8.26.010  Declaration of purpose. It is the purpose of this ordinance to establish a user fee for commercial refuse collection in the city of Wauwatosa and to further establish regulations pertaining to commercial refuse collection. It is further the purpose of this ordinance to supersede for purposes of commercial refuse collection any conflict that may exist between this ordinance and the general garbage collection provisions of chapter 8.24.

action deny the respondents equal protection of law contrary to the United States and Wisconsin Constitutions? Concluding that the legislative action of Wauwatosa is not

8.26.020 Definitions. As used in this chapter, the following words and phrases shall have the meanings ascribed to them in this section.

A. "Commercial" refers to business, mercantile and industrial enterprises, except manufacturing, and the activities associated therewith. It includes churches, public and parochial education institutions, hospitals, charitable organizations, and residential buildings of more than four living units.

B. "Garbage" is all waste, animal, fish, fowl, fruit or vegetable matter incident to and resulting from the use, preparation and storage of food for human consumption, including spoiled food, but exclusive of such items when enclosed in containers of a noncombustible nature.

C. "Construction waste" is waste resulting from building construction, alteration or repair, and earth from excavation.

D. "Refuse" is the refuse of animal or vegetable substances which has been used or intended as food for man or animal and including, but not limited to, paper, cardboard, cardboard boxes, shoes and clothing, glass, metal, crockery, wood, tin and aluminum containers, as may be accumulated in the customary use of a place of business.

E. "Special refuse" consists of large items such as appliances, hot water tanks and/or other large, bulky equipment items which cannot be handled without special equipment and manpower.

F. "Premises" means a parcel of land, whether composed of one or more city lots, upon which any building or group of buildings are located, and it shall expressly apply when more than one building is located upon a lot or lots under a single ownership or management.

G. "Person" is any person, firm, partnership, association, corporation, company or organization of any kind.

H. "Violator" means the person responsible for a violation of any provision of this chapter. The manager or person in charge of the premises shall be presumed to be the person responsible.

I. "Manufacturing wastes." Any and all wastes or refuse generated in the manufacturing process and/or related activities associated therewith shall be excluded from any type of commercial collection furnished by the city.

contrary to statutory laws and the equal protection clauses, we reverse.

Wauwatosa, in preparing its 1982 budget and in endeavoring to alleviate the onerous costs of government

J. "Containers" shall be lightweight, metallic, watertight containers, twenty to thirty gallon capacity, with suitable handle and separate, close-fitting covers, or plastic bags, or standard truck-loading steel containers with hinged covers, on swivel type caster wheels. Any of such containers shall be capable of being handled by one person.

8.26.030 Preparation, storage and disposal. Commercial wastes, unless specifically excluded, shall be collected by the department of public works if prepared and stored as provided herein, so long as the quarterly fee is prepaid.

A. Garbage. Garbage shall be drained of all liquid and packaged by securely wrapping in paper, plastic or by other approved means, and placed in an approved container.

B. Garbage—Commercial. Garbage from commercial establishments can be wrapped as indicated in "A". Such garbage may be handled and stored in any approved manner which provides for easy, safe and clean collection and disposal. Preparation and storage includes, but is not limited to, the following:

1. Draining and placing in garbage cans provided with disposable liners;

2. Draining and placing in leakproof disposable boxes or cartons. Such unwrapped garbage shall be collected by the department subject to appropriate rules and regulations of the board of public works. Improperly prepared and stored, or undrained garbage of a liquid or semiliquid nature will not be collected;

3. Standard truck-loading steel containers, in accordance with the proposed "American National Standard" Z245.3 safety requirements for refuse containers, with hinged-type covers of adequate size and number on swivel-type caster wheels easily maneuvered by one man, not exceeding two cubic yards in capacity.

4. Standard truck-loading steel containers as herein specified shall be provided when garbage can containers exceed eight in number at any premises, provided, however, that the physical characteristics of the property allow the maneuvering of the refuse collection vehicle to a point of reasonably close proximity to the container. A waiver of this provision shall be granted in those circumstances by the board of public works.

to its citizens, decided to charge for the collection of refuse from properties defined as "commerical." Collection of refuse from properties defined as "residential" was to continue without charge, but in an effort to

C. Refuse. All refuse shall be placed in an approved container. Loose refuse stored outside of an approved container will not be collected.

D. Construction Wastes. Construction wastes resulting from the activities of a contractor or other nonoccupant of the premises will not be collected by the department from commercial establishments except as hereafter designated.

8.26.040 Separation of refuse. A. Each and every owner, operator, manager, housekeeper, tenant or occupant of every building or portion thereof in the city of Wauwatosa wherein any refuse accumulates, shall collect the same into approved refuse containers.

B. The owner, operator, manager, housekeeper, tenant or occupant of every building or portion thereof shall provide suitable containers of such weight as can be easily handled by one man, which shall have suitable handles thereon for the storage of refuse pickup. Each such container shall have a separate close-fitting cover which shall be properly affixed at all times. Plastic or paper bags meeting standard regulations as to manufacture and designed especially for refuse disposal purposes may be used. Sufficient containers from the refuse pick-up collection shall be provided by the owner, operator, manager, housekeeper, tenant or occupant. Each owner, operator, manager, housekeeper, tenant or occupant of every building or portion thereof, shall be responsible for keeping the close-fitting covers properly affixed at all times and for maintaining the container storage area free and clear of paper, debris, ice and snow and easily accessible to public employees. Any agreement between either the owner, operator, manager, housekeeper, tenant or occupant in regard to compliance with the provisions of this chapter shall not relieve any party to such agreement from the provisions of this chapter.

8.26.050 Container enclosures. The board of public works is empowered to require the construction of adequate enclosures for refuse containers whenever the location is such that weather elements or vandalism result in refuse being scattered about the premises so as to constitute a health hazard or a nuisance, or when, in the opinion of the board of public works, the location of the refuse containers for the property will have an adverse effect for adjoining properties or when the property will be aesthetically

further reduce costs, residents of residential properties were required to transport refuse containers to curbside for pickup.

enhanced by such refuse enclosures. Any enclosures for refuse containers shall be large enough so that the containers will not bind, and shall have adequate openings so it will be feasible to remove the containers by sliding rather than lifting.

8.26.060 Containers—Location. Containers for the collection of refuse shall be kept in the following listed places:

A. Refuse pickup.

1. At one location outside of a building, not in a garage or other accessory building, readily accessible and convenient to city employees collecting same, but not in a public street, alley, or on a public sidewalk. No refuse container shall be located where it shall be a nuisance or a hazard to health or could be dangerous to persons and property. The board of public works or its designee is empowered to require the relocation of such containers.

2. A weekly combined collection will be made under normal conditions, except when weather conditions and/or holidays prevent the normal one-week pickup. The container locations must be shoveled and kept passable and clear for collection purposes within twelve hours following a snowfall. Failure to do so will discharge the city of any responsibility to perform a weekly pickup.

8.26.070 Special refuse collection. A. Bulky items. Large bulky items or equipment must be placed in an easy accessible location near the container location or curb, for weekly pickup not earlier than Monday of the week of pickup. The city must be notified of requests for such pickups.

B. Special services. Whenever any person desires the removal of wastes not removed in the course of the regular service furnished by the city, such person shall apply to the department to have the same removed at his own expense. A charge, based upon costs involved, shall be made for removal of any excessive or unusual quantities, or wastes requiring unusual handling.

C. Special service collection fee. Special service collection fee shall be as determined by the board of public works, who will arrange for the use of a truck or may provide the services of a mechanical loader for a fee calculated on current cost of labor, equipment and unusual disposal costs as described on a work order.

If charges for special service collections are not paid within a reasonable time, such charges shall be certified in a proper man-

To implement this policy change, the Wauwatosa council enacted ch. 8.26 and passed resolution R–81–797. The ordinance created a commercial collection district

ner to have them levied as special charges against such property served and the clerk is hereby authorized and directed to enter such charges on to the tax roll as authorized by Wis. Stats. 66.60(16).

The board of public works or its designee shall have the authority to refuse a request for a special service collection if it determines it would be a special service collection for which he cannot afford manpower or equipment.

8.26.080 Commercial refuse collection fee established.

A. As authorized by Wis. Stats. 66.049, there is hereby created a commercial collection district which district shall include those properties defined as "commercial" in 8.26.020 A of this code.

B. Those commercial properties receiving refuse collection services from the city shall be assessed a special charge as authorized by Wis. Stats. 66.60(16) which shall be referred to as a commercial refuse collection fee.

C. Such commercial refuse collection fee shall be established and made payable as determined by resolution by the common council and be payable quarterly in advance.

8.26.090 Citations for violations. Police officers, officers of the city or agents so assigned by the city of Wauwatosa are empowered to issue citations for the violation of any ordinance codified in this chapter, and the citation shall contain the following information:

A. The name and address of the alleged violator;

B. The alleged offense;

C. The time and place of the offense;

D. The section of ordinances violated;

E. A statement which informs the alleged violator of the following:

1. That he may make a cash deposit of a specified amount to be mailed to the municipal court within a specified time.

2. That if he makes such a deposit he need not appear in court unless he is subsequently summoned.

3. That if he does make a cash deposit and does not appear in court, either he will be deemed to have tendered a plea of no contest and submitted to a forfeiture not to exceed the amount of the deposit or he will be summoned into court to answer the complaint if the court does not accept the plea of no contest.

defining the types of property to be included while the resolution authorized a service charge reasonably related to costs. Dwelling buildings exceeding four units were included in the term "commercial."

Respondents commenced this class action suit in May of 1982. The certified class was stipulated to, and an undisputed stipulation of factual evidence was presented to the trial court. The trial court in an order entered December 21, 1982, ruled that ch. 8.26 and R–81–797 were illegal and void. Wauwatosa appeals from this order.

## STATUTORY AUTHORITY

Respondents first argue that Wauwatosa was not authorized to create a single citywide commercial collection district defined by the type of property. They next argue that once Wauwatosa determines to provide refuse collection service to certain properties, as it has, Wauwatosa does not have the power to change its past policy and to charge some properties by one method of payment and others by a different method. Because we conclude that Wauwatosa did not exceed its statutory authority by causing such a change, we disagree.

The two statutes pertinent to this discussion are secs. 66.049 and 66.60(16)(a), Stats.[2] When statutory lan-

---

4. If he does not make a cash deposit and does not appear in court at the time specified, a warrant will be issued for his arrest;

F. A direction that if the alleged violator elects to make a cash deposit, he shall sign an appropriate statement which accompanies the citation to indicate that he read the statement required under subsection E of this section and shall send the signed statement with a cash deposit.

Part 2. This ordinance shall take effect and be in force from and after its passage and publication.

[2] Section 66.049, Stats., reads as follows:

Removal of Rubbish. Cities and villages may cause the removal of ashes, garbage, and rubbish from such classes of places therein

guage is clear and unambiguous, no judicial rule of construction is permitted, and courts must implement the express intention of the legislature by giving the language its ordinary and accepted meaning. *DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982); *see also* sec. 990.01(1), Stats. Determining that the language of both statutes has not been challenged and that the language is clear and unambiguous, we shall give the language its ordinary and accepted meaning.

Section 66.049, Stats. authorizes a city to collect refuse from such classes of property that its legislative body decides. This grant of power is permissive. Additionally,

as the board or council shall direct. The removal may be from all such places or from those whose owners or occupants desire the service. Districts may be created and removal provided for certain of them only, and different regulations may be applied to each removal district. The cost of removal may be provided for by special assessment against the property served, by general tax upon the property of the respective districts, or by general tax upon the property of the city or village.

Section 66.60(16)(a), Stats., reads as follows:

In addition to all other methods provided by law, special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care. The provisions for notice of such charge shall be optional with the governing body except that in the case of street tarring and the repair of sidewalks, curb or gutters, a class 1 notice, under ch. 985, shall be published at least 20 days before the hearing or proceeding and a copy of the notice shall be mailed at least 10 days before the hearing or proceeding to every interested person whose post-office address is known, or can be ascertained with reasonable diligence. Such notice shall specify that on a certain date a hearing will be held by the governing body as to whether the service in question shall be performed at the cost of the property owner, at which hearing anyone interested will be heard.

the statute, again in permissive terms, allows a city to create districts and to remove refuse from certain of the districts if desirable. The last sentence of the statute authorizes three methods of payment for the service. They are as follows: (1) a special assessment may be made against the property serviced; (2) a general tax may be levied against the property in any created district; or (3) a general tax may be levied on all of the property of the city. Section 66.60(16)(a) provides a fourth method to defray the cost. A special charge for all or part of the service may be imposed on the property served.

From a plain reading of these statutes, we conclude that a city may collect refuse from whatever classes of property it chooses. If it wishes, it may establish districts to implement and perhaps facilitate the rendering of the service, but it need not. To liquidate the cost of the service, the city may assess the classified type of property served. It may levy a general tax on the property defined to be in a district if a district is created. It may levy a general tax on all of the property in the city or it may charge the property served all or part of the cost of the service.

Section 66.049, Stats., mentions both "classes" and "districts." There exists no language to indicate that these terms are mutually exclusive. It is possible that under given circumstances the terms "classes" and "district" may overlap in purpose, but their coterminous existence does not necessarily create statutory surplusage. Here, because we conclude that their existence may create desired flexibility, there is an absence of surplusage.

A historical legislative reconnaissance reveals no compelling reason for a city to create "a district" or "dis-

tricts" for the purposes of refuse collection. If, however, a city council in the discretionary exercise of its broad police powers desires to utilize a nominal "district" concept, we can perceive no reasonable basis for requiring per se that more than one district must be created as long as the legislative result is not arbitrary and has a rational basis.

Because of current financial pressures our state's municipal governments cry out for creative methods to legitimately serve the public interest. This need will not be met if past proven modes are not reenergized with the appropriate degree of flexibility to encourage much needed solutions.

We acknowledge that historically the administrative concept of "district" possessed solely geographic connotations, but we can find no persuasive precedent for the concept to have only that characteristic if it is well enough defined to be reasonably understood. The law of zoning has addressed this problem and breathed new vitality into old concepts. By analogy, to satisfy changing needs, a municipality's ability to liquidate the cost of services it provides ought to be accorded the same reasonable measure of flexibility. *See* R. Anderson, American Law of Zoning sec. 8.02 (1968).

Doubtless, cities of our state have four methods to liquidate the costs of refuse collection. The recognition of these four alternatives, however, does not logically necessitate that only one method of payment must be provided for all classes of property, if the safeguards of equal protection are present.[3] Here, we find no evidence of Wauwatosa's failure to follow the well-recognized

---

[3] It is a well-settled principle of constitutional law that all that is demanded by the equal protection clause of the fourteenth amendment is that a charge affect alike all persons similarly occupied and all property is the same classification.

rubrics of equal protection. We hold that Wauwatosa did not exceed its statutory authority by creating collection districts defined by the type of property served and employing different methods of payment as between the districts.

## EQUAL PROTECTION

Respondents next argue that they were denied equal protection because there are no facts existing or rationale set forth which would reasonably justify any distinction between commercial and residential classes. The respondents also argue that Wauwatosa has artificially distinguished between certain types of residential property and that, therefore, ch. 8.26 is unconstitutional because it denies equal protection of law.

Absent a "fundamental right" or of an "inherently suspect classification," there is a strong presumption that a classificatory scheme established either by statute or by ordinance is valid. *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976). When a classification is challenged as violative of the equal protection requirements, the challenger assumes a heavy burden and must prove misuse of legislative discretion beyond a reasonable doubt. *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504, 511, *cert. denied,* 449 U.S. 1035 (1980).

Although the collection of refuse is one of numerous governmental functions, its existence does not give rise to a vested right to its continuation or the creation of a "fundamental right." Nor, for that matter, can we ascertain any basis for concluding that the owners of multiple unit buildings of five or more and other properties defined as commercial are an "inherently suspect class." *Goldstein v. City of Chicago,* 504 F2d 989, 991 (7th Cir. 1974) ; *see also Carpenter v. Commissioner of Public*

*Works,* 115 Wis. 2d 211, 218–19, 339 N.W.2d 608, 611 (1983).

The appropriate standard for review of a classificatory scheme is whether there is a rational basis for the classification. *Sambs, supra,* at 370–71, 293 N.W.2d at 511–12. The challenged classification must rationally relate to a legitimate state interest. The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification, *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734, 742 (1974) ; or which reasonably may be conceived to justify the class. *McGowan v. Maryland,* 366 U.S. 420, 426 (1961). If the legislative body has not set forth its rationale for creating a classificatory scheme and imposing service charges:

[I]t is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be undisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow. *Sambs, supra,* at 371, 293 N.W.2d at 512.

Our review of the entire record discloses that, prior to the adoption of ch. 8.26 and the accompanying resolution R–81–797, Wauwatosa never had a separate ordinance for commercial refuse collection. There existed but one refuse collection ordinance which established rules and regulations for all uses except those defined as industrial. Over a period of time, however, a practice developed to distinguish and treat the commercial collection of refuse differently from residential collection. Ninety-five percent of all of the commercial establishments were served by what was designated as three commercial two-

man crews. The collection for these properties involved different procedures. Different types of wheeled containers were used which necessitated special dumping equipment. To facilitate the process, segregated routes were initiated. In fact, a commercial collection system was in existence prior to the enactment of ch. 8.26.

The city council requested reports concerning the cost of commercial refuse collection versus the costs for residential collection. Surveys were taken and comparable cost studies were rendered. Components of the survey included the amount by weight of residential versus commercial refuse collection, the number of containers used for commercial purposes and the total cost of the entire system. The cost for the commercial part of the system took into account direct labor costs, fringe benefits, equipment and other miscellaneous expenses. Based on these studies and the determination of the cost of commercial collection, a rate schedule was formulated to reasonably approximate the costs.

At the very same time that the commercial collection data was being gathered and analyzed, a parallel study was completed to reduce residential collection costs. Possessing this information, the city council, as a matter of policy, in effect, created two refuse collection classifications. If the owners of the types of buildings defined as commercial desired refuse collection, they could obtain it from Wauwatosa at a rate reasonably approximating the cost. On the other hand, residential occupants were required to make a contribution to the labor costs by conveying their refuse containers to curbside for pickup, a task previously performed by Wauwatosa employees. To reduce costs, a municipal interest, the city council, by ordinance, legitimized the two different refuse collection systems, which in fact already existed. The distinctions for these two systems were based on the data gathered in the surveys and cost studies.

Since the classification of multiple dwelling units of five or more and other defined commercial buildings is not "inherently suspect" and since garbage collection is not a "fundamental right," we must only determine whether the rational basis test has been satisfied. From the data included in the undisputed evidence it is not unreasonable to conclude that there are valid distinctions in the methods, procedures and costs for refuse collection of property defined as commercial. In recognizing these distinctions, Wauwatosa changed its policy to reduce the costs of collections for both categories of properties. To accomplish this goal new classifications were legitimately established based on the assembled data.

The reasons for the two classifications were the distinctions made manifest by the surveys and reports submitted to the city council and the conclusions drawn from them by the city manager. We conclude that there is a reasonable basis for the two classes; that the Wauwatosa city council did not misuse its legislative discretion; and that the respondents did not meet their burden of proof. Therefore, ch. 8.26 does not violate the protection provided by the equal protection provisions of the fourteenth amendment and the Wisconsin Constitution.

*By the Court.*—Order reversed and cause remanded.